UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JAMES S. POMEROY, SR., )<br>)<br>Plaintiff, )<br>) Civil Action No.<br>v. ) 03-40283-FDS<br>)<br>ASHBURNHAM WESTMINSTER )<br>REGIONAL SCHOOL DISTRICT, )<br>)<br>Defendant. )<br> ) | |

## AMENDED MEMORANDUM AND ORDER ON MOTION TO DISMISS

**SAYLOR, J.**

This is an action under 42 U.S.C. § 1983 by the father of an expelled student against a school district. Plaintiff James S. Pomeroy, Sr., is the administrator of the estate of his deceased son, James S. Pomeroy, Jr. The son, who was then 16 years old, was suspended from Oakmont Regional High School, part of defendant Ashburnham-Westminster Regional School District, on June 10, 2003, for distributing drugs at school. On June 26, after a hearing, he was expelled. Two weeks later, on July 10, he died.

James S. Pomeroy, Sr., as executor of his son's estate, brought this action on December 16, 2003. He is proceeding *pro se*. The complaint, as modified in response to defendant's motion for a more definite statement, alleges a violation of the son's procedural due process rights. In essence, the father contends that the son did not receive proper written notice of the hearing; was not given the right to be represented by a lawyer or advocate; was not given adequate time to

prepare for the expulsion hearing;[1] was not given access to the evidence prior to the hearing;[2] was not given the right to question witnesses; and was not provided a reasonably prompt, written decision setting forth the specific grounds for the decision. Although the complaint does not indicate the precise basis of the asserted federal right of action, the Court will presume that plaintiff intends to proceed under 42 U.S.C. § 1983.

The defendant school district denies that it violated the son's procedural due process rights in any respect. It has moved to dismiss this action for failure to state a claim upon which relief can be granted on six grounds: (1) that the complaint does not allege an actionable deprivation of procedural due process; (2) that the plaintiff father lacks standing to bring claims on his own behalf; (3) that the claim of the son abated upon his death; (4) that the complaint does not state a Fourth Amendment claim; (5) that the complaint does not state an Eighth Amendment claim; and (6) that the school district cannot be held liable in the absence of any allegation of an unlawful policy or practice.

The Court will interpret the complaint to allege a claim by the father as executor of the son's estate, not in his individual capacity, and therefore the father has standing to bring the claim. Furthermore, and for the reasons stated below, this Court concludes that the motion to dismiss will be denied as to the procedural due process claim, and granted as to the claims based on the Fourth and Eighth Amendments.

---

[1] Plaintiff alleges that his right to adequate time to prepare for the hearing was "denied until Plaintiff had to insist with defendant in writing . . . that more time to prepare for the hearing was needed." The complaint is thus unclear as to whether plaintiff is still asserting a denial of adequate preparation time or whether the four-day delay cured this alleged defect.

[2] Again, it is unclear whether plaintiff is still pursuing this claim; the complaint states that his right to view the documented evidence was "denied *initially until* Plaintiff insisted in writing" that he have access to the documents. (emphasis added).

I.   **Background**

    A.   **Factual Allegations of the Complaint**

The original complaint in this case consisted of a single-page handwritten document with only the barest of factual and legal allegations. Defendants moved for a more definite statement, which was granted by the Court; plaintiff then filed a "reply to motion for more definite statement," setting forth a substantially more detailed version of the facts and the legal claims. Attached to the "reply" were six exhibits, including a portion of Oakmont's expulsion policy and various items of correspondence from Susan Pomeroy (plaintiff's wife), the school, the school district, and the Commonwealth of Massachusetts Department of Education.

Defendant has now moved to dismiss the complaint for failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6). Ordinarily, in considering a motion to dismiss, the court is confined to the four corners of the complaint; however, the court may also consider, among other things, "documents the authenticity of which are not disputed by the parties; . . . official public records; . . . documents central to plaintiff['s] claim; or . . . documents sufficiently referred to in the complaint." *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir.1993).

Here, the "reply to motion for more definite statement" is, in substance, an amended complaint. The six attachments to the "reply" are central to plaintiff's claim, and they consist, in part, of official public records. Their authenticity is unopposed by the defendant; in fact, defendant refers to the same documents in support of its motion to dismiss. *See Venture Associates Corp. v. Zenith Data Systems Corp.*, 987 F.2d 429, 431 (7th Cir. 1993) ("Documents that a defendant attaches to a motion to dismiss are considered a part of the pleadings if they are

referred to in the plaintiff's complaint and are central to her claim.") (quoted approvingly in *Beddall v. State Street Bank & Trust Co.*, 137 F.3d 12, 17 (1st Cir. 1998)).[3]

Accordingly, the Court will consider the complaint, the "reply to motion for more definite statement," and the exhibits to the "reply" together to be an amended complaint for purposes of the motion to dismiss. The factual allegations of that complaint, set forth in the light most favorable to the plaintiff, are summarized below.

### B. Summary of Factual Background

In early 2003, James S. Pomeroy, Jr. ("James") was a student at Oakmont Regional High School in Ashburnham, Massachusetts, which is administered by defendant Ashburnham-Westminster Regional School District ("AWRSD"). James was then 16 years old.

On February 28, 2003, James received a ten-day suspension for violating the Oakmont Chemical Health Policy, which prohibits, among other things, buying, selling, or giving away a controlled substance on school grounds.

On June 10, 2003, James received another ten-day suspension for violating the Oakmont Chemical Health Policy. That day, the AWRSD sent a letter to James's parents, plaintiff James S. Pomeroy, Sr. ("Pomeroy") and his wife, Susan, informing them of the suspension. The letter referred to the section of the Oakmont Student Handbook governing violations of the Chemical Health Policy and notified them that an expulsion hearing was scheduled for June 20. In addition, the letter stated that "[i]n light of James's repeated violation of Oakmont's Chemical Health Policy, he must be seen by a certified drug abuse counselor to address any continuing substance

---

[3] In addition, courts traditionally have demonstrated more leniency when evaluating *pro se* complaints, *see Dominique v. Weld*, 880 F. Supp. 928, 932 (D. Mass. 1995), and the Court has interpreted plaintiff's pleadings here in that spirit.

issues. A written evaluation from this counselor must be presented on or before the hearing date."

The Oakmont Student Handbook affords students facing expulsion the following procedural rights: (1) written notice of the charges; (2) the right to be represented by a lawyer or advocate (at the student's expense); (3) adequate time to prepare for the expulsion hearing; (4) access to documented evidence before the hearing; (5) the right to question witnesses; and (6) a reasonably prompt, written decision including specific grounds for the decision.

On June 13, 2003, Susan Pomeroy contacted the AWRSD Superintendent, Charles Thibodeau, Jr. She requested access to the documentary evidence against James; Thibodeau allegedly informed her that such access was unnecessary. That same day, she wrote a letter to Thibodeau reasserting her son's right to obtain access to the evidence, stating that the timing of the expulsion hearing did not allow for adequate preparation, and requesting a meeting for the purposes of reviewing the evidence. The Pomeroys apparently were granted access to the physical evidence.

On June 19, Mrs. Pomeroy wrote a second letter to Thibodeau in which she stated that she and her family needed additional time to review the evidence. At some point, the expulsion hearing was postponed from June 20 to June 24.

The hearing was held on June 24, 2003. James was not permitted to bring counsel to the hearing. According to Pomeroy, Oakmont Principal William Waight II had informed Pomeroy during a telephone conversation that if the Pomeroys brought a lawyer, Principal Waight would not attend, and that "[the school district was] not going to bring in all these people [Pomeroy] requested for this hearing . . . It will be [the Pomeroys] and the school staff." Pomeroy also

5

contends that James was not permitted to question witnesses, either prior to or during the hearing; in fact, he and James were forced to leave the room when the witnesses were questioned.

By letter dated June 26, 2003, Superintendent Thibodeau advised the Pomeroys that James had been expelled from school for violating the Chemical Health Policy. The letter states that he had considered "the testimony presented in either written or oral forms by school administrators, the Pomeroy family members present, and the three young women who were involved in these incidents with James."

Two weeks later, on July 10, James died. The record does not indicate the cause of his death.

At some point after the hearing, Pomeroy wrote to the Massachusetts Department of Education ("DOE"), complaining that the AWRSD had violated state and federal law in various respects in the course of the suspension and expulsion process. On October 7, 2003, the DOE sent a letter to the AWRSD Superintendent, stating that it had conducted an investigation of the AWRSD's suspension and expulsion policies between July and October of 2003 in response to a written statement of concern by Pomeroy. The letter summarized the steps the DOE took in investigating Pomeroy's complaint, set forth its findings, and instructed AWRSD on "corrective action which must be implemented." Among other things, the DOE instructed the school district to "revise the written notification provided to parents and students regarding suspension/ expulsion and the Student Rights and School Suspension Policy in the high school student handbook to be consistent with the procedural requirements in accordance with [Mass. Gen. Laws ch.] 71, § 37H and 37H½ and Goss v. Lopez, 419 U.S. 565 (1975)."

### C.     Legal Allegations of the Complaint

6

Pomeroy is the executor of the estate of James, who apparently died intestate. He contends that AWRSD violated various procedural due process rights guaranteed to James under federal and state law, including the Fourteenth Amendment of the United States Constitution, Mass. Gen. Laws ch. 71, §§ 37H, 37H½, and provisions of the Oakmont Student Handbook created pursuant thereto. Plaintiff also alleges that James "was denied federally or constitutionally mandated measures under The Federal Constitution Amendment number eight providing him protection from excessive punishment. He was removed from school without a proper hearing. Amendment number four was violated as James S. Pomeroy Jr. was illegally searched by the defendant."

First, plaintiff contends that the June 13 written notice of the charges against James was inadequate because it failed to notify James or his parents of his procedural rights during the expulsion process. Pomeroy argues that under *Goss v. Lopez*, 419 U.S. 565 (1975), and Mass. Gen. Laws ch. 71, §§ 37H and 37H½, written notification of potential expulsion from school must include a description of the nature of James's procedural rights.[4]

Second, plaintiff alleges that James's right to legal representation was denied when he was not permitted have counsel at the hearing.

---

[4] Mass. Gen. Laws ch. 71, § 37H states in relevant part: "Each school district's policies pertaining to the conduct of students shall include the following: disciplinary proceedings, including procedures assuring due process; standards and procedures for suspension and expulsion of students; . . . standards and procedures to assure school building security and safety of students and school personnel; and the disciplinary measures to be taken in cases involving the possession or use of illegal substances or weapons, the use of force, vandalism, or violation of other student's civil rights."

The second statute, Mass. Gen. Laws ch. 71, § 37H½, applies only if (1) a student has been formally charged with a felony in a criminal complaint or a felony delinquency complaint; (2) a student has been convicted of a felony; or (3) "upon an adjudication or admission in court of guilt with respect to such a felony or felony delinquency." Mass Gen. Laws ch. 71, §§ 37H½ (1), (2). Because the record does not indicate any charge, conviction, or admission in court of any crime, the procedural protections of this statute appear to be inapplicable to plaintiff's claim. The Court will therefore proceed on the assumption that § 37H is the relevant state statute.

Third, plaintiff contends that James would not have been afforded adequate time to prepare for the expulsion hearing had the Pomeroys not insisted upon it. Similarly, Pomeroy alleges that James was initially denied access to documentary evidence, and was only provided the opportunity to examine the evidence after repeated requests.

Finally, Pomeroy claims that James was denied his right to confront and question witnesses both prior to and during the expulsion hearing.

The original, handwritten complaint requested no relief from the Court. The "reply" to the motion for definite statement states the following:

> Regarding Injunctive relief, plaintiff desires school records to be amended to reflect that the expulsion and prior suspension were 'invalid[.'] . . . [P]laintiff [also] seeks $686,000.00 in monetary relief for violation of James S. Pomeroy Jr.'s civil rights under due process.

## II.  Analysis

### A.  The Applicable Standard of Review

A motion to dismiss under Rule 12(b)(6) "serves only one purpose, and that is to test the legal sufficiency of the allegations, not of the evidence likely to be introduced at trial or on a motion for summary judgment." *In re Digital Equipment Corp. Securities Litigation*, 601 F. Supp. 311, 313n.2 (D. Mass. 1984). The court must "assume the truth of all well-pleaded facts and indulge all reasonable inferences that fit the plaintiff's stated theory of liability." *Redondo-Borges v. United States Dept. of Housing and Urban Development*, 421 F.3d 1, 5 (1st Cir. 2005). A claim should be dismissed pursuant to Rule 12(b)(6) "only if 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Roeder v. Alpha Industries, Inc.*, 814 F.2d 22, 25 (1st Cir. 1987) (quoting *Conley v. Gibson*, 355

U.S. 41, 45-46 (1957)).

### B. Whether the Claim Abated Upon the Death of the Son

The initial question presented is whether an action under 42 U.S.C. § 1983 alleging a deprivation of procedural due process survives the death of the party whose rights were allegedly violated. No federal statute directly addresses the issue: "federal law simply does not 'cover every issue that may arise in the context of a federal civil rights action.'" *Robertson v. Wegmann*, 436 U.S. 584, 588 (1978) (quoting *Moor v. County of Alameda*, 411 U.S. 693, 702 (1973)). Under 42 U.S.C. § 1988, where federal law is silent, state law normally governs, unless inconsistent with federal law:

> [I]n all cases where [federal laws] are not adapted to the object, or are deficient in the provisions necessary to furnish suitable remedies and punish offenses against law, the common law, as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction of such civil or criminal cause is held, so far as the same is not inconsistent with the Constitution and laws of the United States, shall be extended to and govern the said courts in the trial and disposition of the cause . . . .

*Id.*, § 1988(a).

At common law, the claim of an injured party did not survive the death of either the injured party himself or the alleged wrongdoer. *Robertson*, 436 U.S. at 589, (quoting *Moor*, 411 U.S. at 702 n.14); *Pine v. Rust*, 404 Mass. 411, 417 (1989). That rule, which was often harsh in its application, has been modified by statute in Massachusetts. *See* Mass. Gen. Laws ch. 228, § 1. The Massachusetts survival statute provides as follows:

> In addition to the actions which survive by the common law, the following shall survive:—
>
> (1) Actions under chapter two hundred and forty-seven [i.e., for replevin];

> (2)   Actions of tort (a) for assault, battery, imprisonment or other damage to the person; (b) for consequential damages arising out of injury to the person and consisting of expenses incurred by a husband, wife, parent or guardian for medical, nursing, hospital or surgical services in connection with or on account of such injury; (c) for goods taken or carried away or converted; or (d) for damage to real or personal property; and
>
> (3)   Actions against sheriffs for the misconduct or negligence of themselves or their deputies.

This case is not an action for replevin; an action of tort for consequential damages, goods taken or carried away or converted, or damage to real or personal property; or an action against a sheriff or a sheriff's deputy. Nor is it an action "which survive[s] by the common law." *Compare Sheldone v. Marino*, 398 Mass. 817, 819 (1986) (right of interested person to contest a will survives the death of the contestant). The question is thus whether this claim is an "[a]ction[] of tort . . . for . . . damage to the person."

In *Wilson v. Garcia*, 471 U.S. 261, 279 (1985), the Supreme Court held that, for purposes of determining the appropriate state statute of limitations, all actions brought under § 1983, regardless of their nature, should be characterized as "involving claims for personal injuries." The court looked to the purpose and history of § 1983, as well as the desirability of a relatively simple and uniform nationwide approach to the issue, in making that determination. *Id.* at 271-79. At least two Courts of Appeals have applied the principle of *Wilson* to the question of whether a claim under § 1983 abates upon the death of the plaintiff. *See Anderson v. Romero*, 42 F.3d 1121, 1123-34 (7th Cir. 1994); *Caine v. Hardy*, 943 F.2d 1406, 1410-11 (5th Cir. 1991); *Bennett v. Tucker*, 827 F.2d 63, 67-68 (7th Cir. 1987); *cf. Slade v. United States Postal Service*, 952 F.2d 357 (10th Cir. 1991) (in Title VII action, state statute on survival of personal injury

claims applies) (citing *Bennett*, 827 F.2d at 67-68).  *But see, e.g.*, *Parkerson v. Carrouth*, 782 F.2d 1149 (8th Cir. 1986) (§ 1983 claim involving malicious prosecution and conspiracy not a "wrong done to the person" for purposes of Arkansas survival law).

This approach is not without its flaws, beginning with its highly elastic view of the term "personal injury."[5]  Nonetheless, the Court is persuaded that the approach is correct.  First, it is consistent with *Wilson*; there is no obvious reason, in logic or policy, why state statutes of limitation and statutes addressing abatement should be treated any differently for these purposes.  Second, such an approach is simple and easy to apply, which reduces both uncertainty and transaction costs for litigants and conserves judicial resources.  Third, it promotes uniformity.  Finally, it minimizes the possibility that a court will have to wade into the morass of determining whether a state statute is "inconsistent" with federal law.

It is true that the likely effect of such an approach is that § 1983 claims will almost never abate upon the death of the injured party, as virtually every state has adopted a statute preserving at least some personal injury claims from abatement.  *See* W. KEETON, ET AL., PROSSER & KEETON ON THE LAW OF TORTS § 126 (5th ed. 1984).  If, however, the abatement of § 1983 actions upon the death of the plaintiff serves an important public policy goal, that goal is not immediately

---

[5] A § 1983 claim alleging a deprivation of constitutional rights that resulted in death or physical injury falls easily within the concept of "personal injury."  *See Mellinger v. Town of West Springfield*, 401 Mass. 188, 192 (1987); *Bibbo v. Mulhern*, 621 F. Supp. 1018, 1024-25 (D. Mass. 1985).  It is less obvious that a claim alleging a violation of procedural due process is a claim for "personal injury" as that term is commonly understood.  While the Massachusetts Supreme Judicial Court has interpreted the term "damage to the person" broadly, so that it encompasses all harms to the body, mind, or emotions, *see Harrison v. Loyal Protective Life Ins. Co.*, 379 Mass. 212, 215-18 (1979), the SJC has also made clear that Mass. Gen. Laws ch. 228, § 1 does not apply to every claim for wrongful conduct.  Thus, in *Pine v. Rust*, 404 Mass. 411, 417-18 (1989), the court held that an action under Mass. Gen. Laws ch. 272, § 99 for unlawful wiretapping did not survive the death of the plaintiff.  The court observed that "[a]lthough the privacy interests protected by the statute in question are real and significant, they are by their very nature lacking in clear definition and difficult to quantify," that no actual damage had been sustained, and that accordingly, the action "cannot be said to be one for 'damage to the person.'"  *Id*. at 418.

apparent. Furthermore, and in any event, such a goal would run counter to the public policy of all, or nearly all, fifty states.

Accordingly, the Court will treat this procedural due process claim as a claim for "personal injury" under Massachusetts law. Because Mass. Gen. Laws ch. 228, § 1 provides in substance that an action "in tort" for "damage" survives the death of the injured party, this action did not abate upon the death of James Pomeroy, Jr., and accordingly will not be dismissed on that basis.

### C.  Whether the Complaint States a Claim for Violation of Procedural Due Process

In a civil rights action under § 1983, the plaintiff must prove that he was deprived of a right secured by the Constitution or a federal statute by a person acting under the color of state law. *See Baker v. McCollan*, 443 U.S. 137, 146 (1979); *Maine v. Thiboutot*, 448 U.S. 1 (1980) (permitting § 1983 claims against state actors for violation of federal statutes); *Tatro v. Kervin*, 41 F.3d 9, 14 (1st Cir. 1994). Plaintiff grounds his due process claim in part on defendant's alleged failure to comply with Mass Gen Laws ch. 71, § 37H and various regulations found in the Oakmont Student Handbook. However, "[i]t is well established that a state actor's failure to observe a duty imposed by state law, standing alone, is not sufficient to establish a § 1983 claim." *Fournier v. Reardon*, 160 F.3d 754, 757 (1st Cir. 1998). Thus, the Court must examine whether the school's actions, irrespective of state statutes and local regulations, violated the plaintiff's due process rights under the Constitution.

There is no doubt that James Pomeroy, Jr., had a property interest in his public education and a liberty interest in his reputation that were protected under the Fourteenth Amendment's

Due Process Clause. *See Gorman v. University of Rhode Island*, 837 F.2d 7, 12 (1st Cir. 1988) Having provided for the right to a free public education, *see* Mass. Gen. Laws ch. 71, § 1, Massachusetts "may not withdraw that right on grounds of misconduct, absent fundamentally fair procedures to determine whether the misconduct has occurred." *Goss v. Lopez*, 419 U.S. 565, 574 (1975). Moreover, charges of misconduct implicate students' liberty interests because, "[i]f sustained and recorded, those charges could seriously damage the students' standing with their fellow pupils and their teachers as well as interfere with later opportunities for higher education and employment." *Id.* at 575.

This, of course, is only the beginning of the due process inquiry. "Once it is determined that due process applies, the question remains what process is due." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). Due process "is not a fixed concept, but, rather, is a flexible standard which varies depending on the nature of the interest affected, and the circumstances of the deprivation." *Gorman*, 837 F.2d at 12 (citing *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976)).

The minimum requirements of due process are notice and an opportunity to be heard. *See Goldberg v. Kelly*, 397 U.S. 254, 267-68 (1970); *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950). Thus, in the context of public school disciplinary hearings, students must be given "*some* kind of notice and afforded *some* kind of hearing." *Lopez*, 419 U.S. at 579. As applied to short suspensions of up to ten days, this standard requires that a school provide a student with (1) notice of the charges; (2) an explanation of the evidence supporting the charges; and (3) "an opportunity to present his side of the story" in "an informal give-and-take between student and disciplinarian." *Id.* at 581, 584. "Longer suspensions or expulsions . . . may require

13

more formal procedures." *Id.* at 584.  The precise level of procedural formalities depends on the weighing of three factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the [State's] interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Gorman*, 837 F.2d at 13 (quoting *Eldridge*, 424 U.S. at 335).

Here, however, the Court need not delve into this potentially complicated analysis because the complaint, read generously, alleges a violation of even the minimal due process requirements for short suspensions.  *See Newsome v. Batavia Local School District*, 842 F.2d 920, 927 (6th Cir. 1988) (although *Lopez* limited its holding to short suspensions, it "nevertheless established the *minimum* requirements for long-term suspensions as well.").

The First Circuit has warned against the "undue judicialization of an administrative hearing, particularly in an academic environment," and has noted that in context of school discipline, "courts should not require that a fair hearing . . . mirror[] a common law criminal trial."  *Gorman*, 837 F.2d at 14.  *See also Remer v. Burlington Area School District,* 286 F.3d 1007, 1010 (7th Cir. 2002) (school disciplinary hearing "need not . . . take the form of a judicial or quasi-judicial trial.") (internal quotation marks omitted).  Whatever the level of procedural formality, however, the hearing must be meaningful and must afford the accused "the opportunity to respond, explain, and defend."  *Gorman*, 837 F.2d at 13.  It is axiomatic that in order to "respond, explain, and defend," the accused must have an opportunity to assess the evidence against him.  The Sixth Circuit, for example, found a clear due process violation where the

14

superintendent "disclosed to the school board, during their closed deliberations, new evidence which had not been presented during the open hearing at which the student was present." *Newsome*, 842 F.2d at 927. In that case—which, like this, involved the expulsion of a high school student for drug trafficking—the court concluded that "it was incumbent upon the school officials who possessed evidence [against the student] to inform [the student], during the school board hearing, of their evidence so that he would have an opportunity to rebut the evidence." *Newsome*, 842 F.2d at 927.

Although plaintiff concedes that the school provided access to documentary evidence prior to the hearing, plaintiff states that he and his son were required to leave the hearing when any witness testified. *Compare Flaim v. Medical College of Ohio*, 418 F.3d 629, 635 (6th Cir. 2005) ("[I]f the hearing is live, the accused has a right to be present for all significant portions of the hearing."). For the purpose of this motion to dismiss, the Court may reasonably infer that James was therefore denied access to relevant evidence against him, and as a result was denied a fair opportunity to rebut that evidence. Accordingly, plaintiff has stated a due process claim that can withstand defendant's motion to dismiss.[6]

### D. Whether the Complaint States a Claim for Violation of the Fourth Amendment

Plaintiff contends that his son was "illegally searched" by defendant, thereby violating his son's Fourth Amendment rights. But nothing in the complaint itself, or any other document

---

[6] State law and local regulations provide for an appeal of the suspension to the superintendent and subsequent judicial review of that appeal. *See Doe v. Superintendent of Schools of Stoughton*, 437 Mass. 1 (2002). Nonetheless, plaintiff is not normally required to exhaust state remedies before commencing a § 1983 action. *See Miller v. Town of Hull*, 878 F.2d 523, 530 (1st Cir. 1989) (citing *Patsy v. Board of Regents*, 457 U.S. 496 (1982)).

submitted by plaintiff, alleges or even hints at any facts regarding a search, much less an illegal one.

"The pleading requirements, though minimal, are not non-existent." *Rumford Pharmacy, Inc. v. City of East Providence*, 970 F.2d 996, 998 (1st Cir. 1992) (internal quotation marks omitted). This is true even when a plaintiff proceeds *pro se*. A plaintiff must "set forth in its complaint factual allegations, either direct or inferential, regarding each material element necessary to sustain recovery under some actionable legal theory." *Remco Distributors, Inc., v. Oreck Corp.*, 814 F. Supp. 171, 174 (D. Mass. 1992). Although the court must view the facts in the light most favorable the plaintiff, it cannot credit "bald assertions [or] unsupportable conclusions." *Aulson v. Blanchard*, 83 F.3d 1, 3 (1st Cir. 1996). The bald assertion that "Amendment number four was violated as James S. Pomeroy Jr. was illegally searched by defendant"—with nothing more—does not satisfy even the minimal requirements of notice pleading.

This Court previously granted defendant's motion under Rule 12(e) for a more definite statement. As plaintiff has already had ample opportunity to fashion a complaint that satisfies the minimal pleading requirements, and has failed to do so, the Court will dismiss the Fourth Amendment claim. *See Cash Energy, Inc., v. Weiner*, 768 F. Supp. 892, 897 (D. Mass. 1991); Fed. R. Civ. P. 12(e).

### E.     Whether the Complaint States a Claim for Violation of the Eighth Amendment

Plaintiff also contends that the suspension violated the Eighth Amendment's "protection from excessive punishment." The Supreme Court has determined that "the history of the [Eighth]

Amendment," along with the Court's own voluminous precedent interpreting the Amendment, confirm that it "was designed to protect those convicted of crimes." *Ingraham v. Wright*, 430 U.S. 651, 664 (1977). The Court specifically declined to "wrench[] the Eighth Amendment from its historical context and extend[] it to traditional disciplinary practices in the public schools." *Id.*, 669. Although *Ingraham* addressed corporal punishment in public schools, its reasoning clearly extends to non-corporal punishments such as the expulsion at issue here. Accordingly, defendant's motion to dismiss this claim will be granted.[7]

### F. Whether the Complaint Alleges a Claim against the School District for an Unlawful Policy or Practice

Plaintiff did not sue any individual school district employees, but rather the school district itself. Accordingly, plaintiff must show that the entity "*itself* causes the constitutional violation at issue. Respondeat superior or vicarious liability will not attach under § 1983." *City of Canton v. Harris*, 489 U.S. 378, 387 (1989); *Monell v. Department of Social Services*, 436 U.S. 658, 694-95 (1978). Plaintiff will therefore be required to demonstrate both the existence of an official policy or custom of the school district and a "direct causal link" between that policy and the alleged constitutional deprivation. *See Harris*, 489 U.S. at 385; *see also Monell*, 436 U.S. at 694 (policy must be the "moving force [behind] the constitutional violation"); *Santiago*, 891 F.2d at 381-82.

Defendant essentially asks the Court to assume that if the procedures employed in

---

[7] Typically, excessive punishment claims against schools are framed as substantive due process violations. In this context, the plaintiff must demonstrate either that the school's actions "shock[] the conscience" or that "there is no rational relationship between the punishment and the offense." *Demers ex rel. Demers v. Leominster School Dept.*, 263 Supp. 2d 195, 206 (D. Mass. 2003) (internal quotation marks omitted). Here, the punishment of expulsion is rationally related to the offense of multiple drug transactions, and such punishment clearly does not shock the conscience.

disciplining James violated his due process rights, those procedures were nonetheless a random, isolated, and unauthorized occurrence. However, the Court must view the facts in the light most favorable to the plaintiff. A liberal reading of the complaint suggests that plaintiff alleges that the procedures employed were the standard custom or practice in the Ashburnham-Westminster Regional School District. For the purpose of this motion, plaintiff has satisfied the causation requirement as well, as the alleged denial of procedural protections relates directly to James's inability to rebut the case against him at his expulsion hearing.

Defendant further contends that even if a due process violation occurred, plaintiff cannot prevail because state law provides an adequate post-deprivation remedy. Defendant relies on the *Parratt-Hudson* doctrine, under which "[w]hen a deprivation of a property interest is occasioned by *random and unauthorized conduct by state officials*, . . . the due process inquiry is limited to the issue of the adequacy of postdeprivation remedies provided by the state." *Lowe v. Scott*, 959 F.2d 323, 340 (1st Cir. 1992) (emphasis added); *see also Hudson v. Palmer*, 468 U.S. 517 (1984); *Parratt v. Taylor*, 451 U.S. 527 (1981). But the requirement that the state's conduct be random and unauthorized makes the *Parratt-Hudson* doctrine inapposite to the present claim. Plaintiff's *Monell* claim alleges a policy or custom of unconstitutional conduct; actions that conform with a policy or custom are not "random or unauthorized." *See Brooks v. George County*, 84 F.3d 157, 165 (5th Cir. 1996); *Wilson v. Town of Clayton,* 839 F.2d 375, 380 (7th Cir.1988). Accordingly, plaintiff's *Monell* claim will not be dismissed for failure to state a claim.

## III.   Conclusion

For the foregoing reasons, the Motion to Dismiss of defendant Ashburnham-Westminster Regional School District is GRANTED in part as to the claims alleging violations of the Fourth

and Eighth Amendments, and DENIED in part as to the claims alleging violations of procedural due process under the Fourteenth Amendment.

**So Ordered.**

                                                /s/ F. Dennis Saylor
                                                F. Dennis Saylor IV
                                                United States District Judge

Dated: January 18, 2005